# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CURTIS CORY et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. CIV-19-221-G |
| | ) |
| **NEWFIELD EXPLORATION** | ) |
| **MID-CONTINENT, INC.,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court is the Motion for Partial Judgment on the Pleadings (Doc. No. 17) filed by Defendant Newfield Exploration Mid-Continent, Inc. ("Newfield"). Plaintiffs have responded in opposition (Doc. No. 18), and Newfield has replied (Doc. No. 19).

SUMMARY OF THE PLEADINGS[1]

Plaintiffs Curtis Cory and Cheryl Cory are the surface owners of a 160-acre tract of land located at Section 36, Township 15 North, Range 9 West in Kingfisher County, Oklahoma. Compl. (Doc. No. 1-1) at 1. On March 14, 1977, Plaintiffs' predecessors in

---

[1] With their Response, Plaintiffs have submitted several documents that were neither attached to nor referenced in the Complaint. The Court may consider such documents without converting Newfield's motion into one for summary judgment because the documents are central to Plaintiffs' claims as advanced in the Complaint and their authenticity is undisputed. *See, e.g.*, *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016); *see also United States v. Zazi*, 356 F. Supp. 3d 1105, 1114 (D. Colo. 2018). Further, Plaintiffs provide in their Response additional details regarding Newfield's efforts to obtain OCC approval to drill the oil well that is the subject of the parties' dispute. *See* Pls.' Resp. (Doc. No. 18) at 3-4. Insofar as these details are "consistent with the facts and theories advanced in the complaint," the Court exercises its discretion to consider them in adjudicating Newfield's Motion. *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001); *see also Zazi*, 356 F. Supp. 3d at 1114.

interest executed an oil and gas lease (the "Lease") in favor of Cal-Tex Tungsten Co., Newfield's predecessor in interest, that burdens an 80-acre tract of Section 36-15N-9W (the "Leased Property"). *Id.* at 2. The Lease provided for an initial three-year term, to continue so long as oil and gas are produced in paying quantities on the Leased Property. *Id.*

> The Lease includes a "voluntary pooling" clause, which provides, in part:
>
> Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in lessee's judgment it is necessary or advisable to do so . . . such pooling to be of tracts contiguous to one another and to be into a unit or units not exceeding 160 acres each in the event of an oil well, or into a unit or units not exceeding 640 acres each in the event of a gas well.

Compl. Ex. A, ¶ 6.

On February 19, 1980, the Oklahoma Corporation Commission ("OCC") entered its Order No. 164538 ("Order No. 164538"), providing among other things "that Section 36, Township 15 North, Range 9 West, Kingfisher County, Oklahoma, is established as one 640-acre drilling and spacing unit for the production of gas and gas condensate from the Tonkawa, Mississippi Solid, and Hunton separate common sources of supply." Pls.' Resp. Ex. 1 (Doc. No. 18-1) at 3.

On April 25, 2017, Plaintiffs contacted Newfield after learning that Newfield intended to drill a horizontal well on Section 36-15N-9W. *See* Compl. at 2-3; Compl. Ex. D. Citing the spacing limitations contained in the Lease's voluntary-pooling clause, Plaintiffs stated to Newfield that any effort to pool or combine the Leased Property into a

2

unit exceeding 160 acres for the purpose of drilling an oil well would violate the Lease terms irrespective of any spacing approval obtained from the OCC. *See* Compl. Ex. D.

On April 27, 2017, Newfield filed an application with the OCC, in Cause CD No. 201702631-T, to establish a 640-acre drilling and spacing unit so that it could drill oil from the Mississippian, Woodford, and Hunton common sources of supply. Compl. at 3; Pls.' Resp. Ex. 2 (Doc. No. 18-2). Newfield later requested to dismiss the application, representing that it no longer intended to drill the well. Pls.' Resp. at 3; Pls.' Resp. Ex. 4 (Doc. No. 18-4).

On May 18, 2017, Newfield filed an application for increased density in Cause CD No. 201703285-T so that it could drill an additional well in a unit established by OCC Order No. 164538. Compl. at 3; Pls.' Resp. Ex. 6 (Doc. No. 18-6). In this application, Newfield stated that Order No. 164538 had "established a 640-acre drilling and spacing unit for the production of oil and gas or gas and gas condensate from the Mississippian common source of supply" underlying Section 36-15N-9W. Pls.' Resp. Ex. 6, ¶ 2 (emphasis omitted). In fact, Order No. 164538 had established Section 36-15N-9W as "one 640-acre drilling and spacing unit for the production of gas and gas condensate from the Tonkawa, Mississippi Solid, and Hunton separate common sources of supply." Pls.' Resp. at 4; Pls.' Resp. Ex. 1, at 3.

On July 6, 2017, the OCC issued Order No. 665651 ("Order No. 665651") granting Newfield's increased-density application. *See* Pls.' Resp. at 4; Compl. Ex. E (authorizing an additional well to be drilled for the Mississippian common source of supply as an "[e]xception" to Order No. 164538). Shortly thereafter, Newfield began drilling the Katie

3

1509 1h-36 (the "Katie 1509"), an oil well, on the western half of Section 36-15N-9W. Compl. at 3; *see also* Answer (Doc. No. 5) at 6.

On November 1, 2018, the OCC issued an order *nunc pro tunc* finding that, due to a scrivener's error, Order No. 665651 erroneously referenced the Mississippian common source of supply rather than the Mississippi Solid common source of supply. *See* Pls.' Resp. at 5; Pls.' Resp. Ex. 8 (Doc. No. 18-8) at 1-2.

On January 30, 2019, Plaintiffs filed suit in the District Court of Kingfisher County, Oklahoma, seeking to quiet title to the Leased Property and asserting claims against Newfield for breach of contract, tortious interference with contract, and bad faith. *See* Compl. at 1-7. After removing this action to federal court, Newfield filed the instant Motion seeking partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## DISCUSSION

Newfield seeks judgment on Plaintiffs' claims for breach of contract, tortious interference with contract, and bad faith. In their Response, Plaintiffs concede that they cannot maintain a claim for tortious interference. *See* Pls.' Resp. at 8. Accordingly, the Court grants Newfield's Motion with respect to that claim and addresses the remaining relevant claims below.

I.  *Subject-Matter Jurisdiction and Collateral Attack*

Newfield argues that Plaintiffs' lawsuit attempts an impermissible collateral attack on Order No. 164538 (establishing Section 36-15N-9W as a 640-acre drilling and spacing unit) and Order No. 665651 (authorizing the drilling of the Katie 1509). *See* Def.'s Mot.

(Doc. No. 17) at 4-5, 8-9. Because this argument implicates the Court's subject-matter jurisdiction, it must be addressed at the outset. *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1254 (10th Cir. 2015) (explaining that "subject matter jurisdiction is a threshold inquiry"); *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1493 (10th Cir. 1995) (finding that on a collateral attack of an OCC order, "the district court had no jurisdiction to inquire into the facts determined in the OCC proceedings" but "could only determine from the face of the proceedings whether the OCC had jurisdiction to issue the order"); *see also Optima Oil & Gas Co. v. Mewbourne Oil Co.*, 500 F. App'x 749, 753-54 (10th Cir. 2012). "A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true." *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009).

Pursuant to Oklahoma statute, courts may not permit a "collateral attack 'upon the orders, rules and regulations of the OCC.'" *Ladra v. New Dominion, LLC*, 353 P.3d 529, 531-32 (Okla. 2015) (alteration omitted) (citing Okla. Stat. tit. 52, § 111); *accord Fransen*, 64 F.3d at 1487 (finding that plaintiffs' claims that "would avoid, defeat or deny the force and effect" of an OCC order were barred by "Oklahoma's statutory proscription against collateral attacks"). The Oklahoma Supreme Court has broadly defined the term "collateral attack" as "an attempt to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial." *Ladra*, 353 P.3d at 532 (internal quotation marks omitted). At the same time, the Oklahoma Supreme Court has explained that OCC orders do not provide blanket immunity from private lawsuits, as the OCC's jurisdiction is "limited to the

5

resolution of public rights." *Tucker v. Special Energy Corp.*, 187 P.3d 730, 733 (Okla. 2008); *see also Grayhorse Energy, LLC v. Crawley Petroleum Corp.*, 245 P.3d 1249, 1254 (Okla. Civ. App. 2010) (stating that "a pooling order, or other OCC order, does not immunize the operator, or other parties connected to the pooling order, from lawsuits in the district courts").

While the OCC has exclusive jurisdiction to regulate oil and gas exploration and production for the protection of public rights, "[state] district courts have jurisdiction to resolve disputes over *private rights* involving mineral interests and oil and gas leaseholds," including "the relationship of private parties, their duties, their rights and obligations, and the existence of liability for the breach of such duties." *Grayhorse Energy*, 245 P.3d at 1254-55 (internal quotation marks omitted). Judicial adjudication of private rights under a leasehold agreement does not amount to a collateral attack on an OCC order unless it would require the court to "reverse, modify, or correct" the order. *Id.* at 1254; *see also Leck v. Cont'l Oil Co.*, 800 P.2d 224, 226 (Okla. 1989) ("[W]hen a dispute arises between a lessor and a lessee regarding the lessee's breach of an implied covenant, the rights involved enter the realm of the private world and are proper disputes for the district court to resolve because they involve issues concerning the construction of a private contract between the parties.").

Plaintiffs in this case seek not to reverse, modify, or correct any OCC order but to enforce a private contractual right. *See* Compl. at 4-5. As such, their lawsuit does not amount to a collateral attack on Order No. 164538 or Order No. 665651, and their claims are properly before this Court. *See Tucker*, 187 P.3d at 734 (holding that plaintiffs' action

6

to quiet title was not a collateral attack on an OCC pooling order because plaintiffs were "not attempting to obtain an order declaring the [pooling order] void"); *Leck*, 800 P.2d at 226 (holding that lessors' "action for damages for the lessee's alleged breach of an implied covenant to protect from drainage [was] a private action arising from their contract and [did] not involve the correlative rights of the 'public'"); *cf. Grayhorse Energy*, 245 P.3d at 1254 ("The [state] district courts do have the power to *adjudicate the legal effect* of an OCC order when necessary to resolve a dispute over private rights.").

II. *Newfield's Motion for Judgment on the Pleadings*

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Court evaluates the motion under the familiar standard applied to Rule 12(b)(6) motions. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)). Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same." *Adams v. Jones*, 577 F. App'x 778, 782 (10th Cir. 2014) (internal quotation marks omitted). "[T]o survive judgment on the pleadings, [the plaintiff] must allege 'a claim to relief that is plausible on its face.'" *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To determine whether the claim to relief is 'plausible on its face,' we examine the elements of the particular claim and review whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

7

alleged." *Id.* (internal quotation marks omitted) (noting that the court does not "accept mere labels and legal conclusions as true").

### A. *Plaintiffs' Breach-of-Contract Claim*

Plaintiffs allege that Newfield violated the 160-acre spacing limitation contained in the Lease's voluntary-pooling clause, which restricts the lessee's right to "pool or combine [the Leased Property] . . . into a unit or units not exceeding 160 acres each in the event of an oil well." Compl. at 2-3 (emphasis omitted) (citing Compl. Ex. A, ¶ 6).

Newfield does not dispute that the Katie 1509 is classified as an oil well or that it was drilled on a unit exceeding 160 acres. *See* Answer at 3-4. Newfield nonetheless contends: (1) that it "drill[ed] the [Katie 1509] pursuant to [Order Nos. 164538 and 665651]," which effectively "overruled" the Lease's 160-acre spacing limitation; and (2) that Plaintiffs have not, in any event, alleged conduct amounting to a violation of the 160-acre spacing limitation. Def.'s Mot. at 6. The Court considers each argument in turn, applying Oklahoma's rules of contract interpretation,[2] the "paramount objective" of which is "to ascertain and give effect to the intention of the parties." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018).

---

[2] A federal court exercising diversity jurisdiction applies the substantive law of the forum state—here, Oklahoma. *See Clark v. State Farm Mut. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005). Under Oklahoma statute, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15, § 162. As the parties do not urge the applicability of any other state's law, the Court will interpret the Lease in accordance with the laws of Oklahoma, the place of contract performance.

8

*1. Whether the OCC Effectively Overruled the 160-Acre Spacing Limitation*

Newfield first argues that the OCC "overruled" the Lease's 160-acre spacing limitation when it issued Order No. 164538 and Order No. 665651. Def.'s Mot. at 6. Newfield contends that such an event was contemplated in paragraph 14 of the Lease, which provides:

> All provisions hereof expressed or implied shall be subject to . . . the orders, rules, and regulations . . . of all governmental agencies administering the same. Should lessee be prevented from complying with any express or implied covenant of this lease . . . by reason of . . . any order, rule or regulation of governmental authority, then while so prevented, lessee's obligation to comply with such covenant shall be suspended and lessee shall not be liable in damage for failure to comply therewith.

Compl. Ex. A, ¶ 14; *see* Def.'s Mot. at 3, 6. Therefore, says Newfield, Plaintiffs can state no claim for breach of the contractual spacing limitation because that limitation must yield to the OCC orders sanctioning the drilling of the Katie 1509. *See* Def.'s Mot. at 3, 6.

The Court disagrees. Paragraph 14 of the Lease reflects the parties' intent to excuse Newfield's compliance with the Lease terms only to the extent compliance is "prevented" by OCC order or some other law or specified occurrence. Compl. Ex. A, ¶ 14; *see Husky Ventures,* 911 F.3d at 1015 (to ascertain the parties' intent, courts "must also look to the entirety of the agreement"). While the pertinent OCC orders may have allowed Newfield to drill for oil on a 640-acre unit embracing the Leased Property, the OCC did not require Newfield to engage in any such drilling activity. Thus, it cannot be said that the orders prevented Newfield from complying with the Lease's 160-acre spacing limitation. *See Watts v. Atl. Richfield Co.*, 115 F.3d 785, 795-96 (10th Cir. 1997) (holding that, while OCC

9

Field Rules "may have allowed" lessee's actions, the Rules did not excuse lessee from complying with lease covenants under lease provision excusing compliance where "prevented by" OCC rules or regulations).

Consequently, paragraph 14 does not supply a basis for granting judgment on the pleadings with respect to Plaintiffs' contract claim.

### 2. *Whether Plaintiffs Allege Conduct Amounting to a Violation of the 160-Acre Spacing Limitation*

Newfield next contends that it "did not voluntarily pool an area greater than 160 acres" when it drilled the Katie 1509 on a preexisting 640-acre unit for which it is the sole working interest owner. Def.'s Mot. at 2, 6-8. Essentially, Newfield maintains that it did not engage in any "pooling" in the literal sense because it already owned 100% of the working interest within the unit—thereby obviating the need to obtain a pooling order from the OCC—and because the royalty interests within the unit were already pooled pursuant to Order No. 164538. *See id.*

The Court deems it unnecessary to determine whether Newfield's actions constitute "pooling" under the Lease, for the Lease additionally prohibits Newfield from "combining" the Leased Property with other acreage if doing so would result in a unit "exceeding 160 acres . . . in the event of an oil well."[3] Compl. Ex. A, ¶ 6. The word "combine," in its

---

[3] The meaning of the term "combine," as used in the Lease, must be understood as distinct from that of "pool." *See Canal Ins. Co. v. Montello, Inc.*, No. 10-CV-411-JHP-TLW, 2013 WL 6732658, at *3 (N.D. Okla. Dec. 19, 2013) (noting in applying Oklahoma law that "[a] contract shall not be interpreted in a manner that leaves words without meaning and renders language superfluous"), *aff'd*, 632 F. App'x 448 (10th Cir. 2015); Okla. Stat. tit. 15, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part . . . .").

"ordinary and popular sense," Okla. Stat. tit. 15, § 160, means "[t]o couple or join two or more things together." *Oxford English Dictionary Online* (Dec. 2019 ed.). With this definition in mind, the Court concludes that the 160-acre spacing limitation reflects the parties' intent to preclude the drilling of an oil well on a unit that includes the Leased Property and is greater than 160 acres irrespective of whether such drilling would require the lessee to procure a pooling order or enter into a pooling agreement with other interest owners.

Accordingly, Newfield has not shown that it is entitled to judgment on the pleadings on Plaintiff's contract claim for violation of the 160-acre spacing limitation.

### B. Plaintiffs' Bad-Faith Claim

Plaintiffs purport to assert a claim against Newfield for breach of "[t]he good faith standard placed upon [Newfield's] exercise of the power to pool." Compl. at 6. Newfield contends, and the Court agrees, that Oklahoma does not recognize a cause of action for bad faith in this context. Def.'s Mot. at 7-8.

Although "[e]very contract in Oklahoma contains an implied duty of good faith and fair dealing," breach of that duty ordinarily "results in damages for breach of contract" and does not give rise to "independent tort liability." *Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004). As potentially relevant here, a tort action may be available, however, in limited situations where there exists a "special relationship" between the parties—the quintessential example being that between an insurer and its insured—that results from a disparity in bargaining power and the noncommercial purpose of the underlying agreement. *Id.* at 561-62.

The Oklahoma Supreme Court has expressed reluctance to extend the bad-faith tort beyond the insurance field. *E.g.*, *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160-61 (Okla. 2010). And this Court has repeatedly observed that "[t]he special considerations at issue in insurance cases simply are not present" in the context of an oil and gas lease and, therefore, has declined to recognize a tort action under Oklahoma law for bad faith breach of an oil and gas lease. *McKnight v. Linn Operating, Inc.*, No. CIV-10-30-R, 2010 WL 9039794, at *5 (W.D. Okla. Apr. 1, 2010); *see Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1263-64 (W.D. Okla. 2012); *Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, No. CIV-11-344-R, 2011 WL 9527717, at *3 (W.D. Okla. July 14, 2011).

Plaintiffs cites two cases—*Imes v. Globe Oil & Refining Co.*, 84 P.2d 1106 (Okla. 1938), and *Gillham v. Jenkins*, 244 P.2d 291 (Okla. 1952)—for the proposition that "a lessee owes a duty of good faith when combining leased acreage to make a larger oil and gas unit." Pls.' Resp. at 9. However, neither case holds that breach of such a duty supports a cause of action beyond breach of contract.

Accordingly, Newfield is entitled to judgment on the pleadings with respect to Plaintiffs' bad-faith claim.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings (Doc. No. 17) is GRANTED IN PART and DENIED IN PART. The Court grants judgment in Defendant's favor on Plaintiffs' claims for tortious interference with contract

and bad faith. Plaintiffs may proceed with their claims to quiet title and for breach of contract. The current stay shall be lifted and a new scheduling order entered.

IT IS SO ORDERED this 28th day of February, 2020.

_____
CHARLES B. GOODWIN
United States District Judge