## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CURTIS CORY AND CHERYL CORY, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. CIV-19-221-G |
| | ) |
| NEWFIELD EXPLORATION | ) |
| MID-CONTINENT INC., | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## DEFENDANT OVINTIV MID-CONTINENT INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Timothy J. Bomhoff, OBA #13172
Jodi C. Cole, OBA #22107
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439
tim.bomhoff@mcafeetaft.com
jodi.cole@mcafeetaft.com

**Attorneys for Defendant Ovintiv Mid-Continent, Inc.,
formerly known as Newfield Exploration Mid-Continent, Inc.**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS.................... 2

ADDITIONAL MATERIAL UNDISPUTED FACTS ....................................................... 9

ARGUMENTS AND AUTHORITIES ........................................................................... 11

   I.   Plaintiffs' Motion is an attempt to collaterally attack valid orders of the OCC. .... 11

II.  Ovintiv did not breach the voluntary pooling provision of the Cory Lease because it was superseded by the Unit created by the OCC. ..................................................... 12

   A.  *The Drilling and Spacing Order supersedes the voluntary pooling provision.*... 13

   B.  *Parties cannot contract around drilling and spacing units created by the OCC.*14

III.   The parties to the Cory Lease intended to prevent waste, promote conservation, and yield to Orders of the OCC entered in furtherance of those goals.......................... 16

IV.  Plaintiffs cite no law in support of their alleged remedy. .................................... 20

CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blocker v. ConocoPhillips Co.*,
  378 F.Supp.3d 1066 (W.D. Okla. May 6, 2019) ............................................................... 6

*GHK Explorations Co. v. Tenneco Oil Co.*,
  857 F.2d 1388 (10th Cir. 1988) .................................................................................... 11

*Gillham v. Jenkins,*
  244 P.2d 291 (Okla. 1952)............................................................................................ 18

*Hladik v. Lee,*
  541 P.2d 196 (Okla. 1975)......................................................................................passim

*Meredith v. Corp. Comm'n,*
  368 P.2d 828 (Okla. 1961)............................................................................................ 11

*Nisbet v. Midwest Oil Corp.*,
  451 P.2d 687 (Okla. 1968)...................................................................................... 14, 15

*ONG v. Long*,
  406 P.2d 499 (Okla. 1965)...................................................................................... 15, 18

*Pack v. Santa Fe Intern. Corp.*,
  869 P.2d 323 (Okla. 1994)............................................................................................ 20

**Statutes**

52 Okla. Stat. § 87.1 .......................................................................................... 8, 17, 19

**Rules**

LCvR 56.1(d)........................................................................................................ 4, 7, 8

The sole question in Plaintiffs Curtis Cory and Cheryl Cory's ("Plaintiffs") Motion for Partial Summary Judgment ("Motion") is whether Defendant Ovintiv Mid-Continent Inc., ("Ovintiv") breached Plaintiffs' Oil and Gas Lease by drilling the Katie 1509 1H-36 ("Katie Well") pursuant to undisputedly valid orders from the Oklahoma Corporation Commission ("OCC"). This dispute hinges on the ability of OCC orders to supersede voluntary pooling provisions in oil and gas leases.

The Oklahoma Supreme Court in *Hladik v. Lee,* 541 P.2d 196 (Okla. 1975), has addressed and rejected the arguments posed by Plaintiffs in their Motion.  Therefore, Ovintiv respectfully requests that Plaintiffs' Motion be denied.

## **INTRODUCTION**

In 1980, the OCC, by Order No. 164538 (the "Drilling and Spacing Order"), established a 640-acre drilling and spacing unit for Section 36-16N-9W, Kingfisher County, Oklahoma (the "Unit").  Plaintiffs own minerals in the Northeast quarter of Section 36 that are subject to an Oil and Gas Lease dated March 14, 1977, recorded at Book 566, Page 409, in Kingfisher County, Oklahoma (the "Cory Lease").  The Cory Lease contains a voluntary pooling provision that limited the size of a *voluntary* unit created by the lessee.  It does not, and cannot, limit the size of drilling and spacing units created by the OCC.  Once the OCC created the Unit, the 160-acre voluntary pooling provision was superseded.

Further, Ovintiv has acted in conformity with the intent of the Cory Lease at all times. Under well-established Oklahoma law, the OCC's authority to create superseding drilling and spacing units is incorporated into oil and gas leases as a matter of law. In

addition, the OCC's mandate is to regulate oil and gas development to promote conservation and protect against waste, and valid Orders from the OCC are presumed to further the purpose of promoting conservation and protecting against waste, which promotes, not frustrates, the intent of the voluntary pooling provision of the Cory Lease.

Finally, parties to an oil and gas lease cannot create private contracts that impinge the authority of the OCC and its actions in the public interest. Plaintiffs' argument that they can contract to negotiate *any* terms contrary to subsequent spacing orders limits the OCC's power to create 640-acre units. Plaintiffs' interpretation would give private parties the ability to render OCC orders meaningless by contract. This argument is not supported by Oklahoma law and must be rejected.

Plaintiffs' claim for breach of contract fails as a matter of law because Ovintiv did not breach the Cory Lease, Plaintiffs' Motion should be denied, and Ovintiv's Motion for Summary Judgment [Doc. No. 48] should be granted.

## RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS[1]

Ovintiv responds to Plaintiffs' alleged undisputed facts as follows:

1.     Ovintiv disputes Plaintiffs' characterization of the Cory Lease. The predecessors of the parties to this suit executed the Cory Lease which granted to Ovintiv or its predecessor the right to voluntarily pool or combine acreage with other land or leases in the immediately vicinity to create units up to 640 acres for gas and 160 acres for oil. *See* Doc. No. 48, Ex. 1, Cory Lease. However, the Cory Lease did not, and could not,

---

[1] Ovintiv submits these responses to Plaintiffs' Statement of Undisputed Facts for purposes of summary judgment only. Ovintiv reserves the right to contest any issue at trial.

limit the size of drilling and spacing units created by order of the OCC for production of oil or gas. *See* Doc. No. 48, Ex. 1, Cory Lease.

2.      Alleged undisputed "fact" No. 2 is not a statement of fact. Rather, it is a statement of law containing a citation to an administrative regulation, and as such, is not proper.   Further, it is irrelevant because the Katie Well was drilled pursuant to an undisputedly valid Drilling and Spacing Order and Increased Density Order and was permitted to be completed as a predominantly <u>oil</u> *or* predominantly <u>gas</u> well. *See* Doc. No. 48, Ex. 3, Drilling and Spacing Order; Ex. 10, Increased Density Order. Accordingly, the OCC orders, which are not subject to collateral attack in this Court, permit the Katie Well to be classified as an oil or gas well. *See id*. The distinction between oil and gas wells is not relevant or material in this case.

3.      Ovintiv admits that Order No. 164538, the Drilling and Spacing Order, established a 640-acre drilling and spacing Unit. Doc. No. 48, Ex. 3. Ovintiv disputes that the Drilling and Spacing Order was limited to the exploration for gas. The OCC has ordered that the Katie Well could be completed as an oil or gas well and could be drilled pursuant to the Drilling and Spacing Order. *See* Doc. No. 48, Ex. 3, Drilling and Spacing Order; Ex. 10, Increased Density Order. Moreover, this fact is immaterial as Plaintiffs have admitted that Ovintiv complied with all OCC orders. *See* Doc. No. 46, Plaintiffs' Motion, p. 13.

4.      Alleged fact No. 4 is irrelevant. The Katie Well was drilled into the Mississippi Solid common source of supply and Order Nos. 148798 and 149991 are not

3

applicable to this case. *See* Doc. No. 48, Ex. 3, Drilling and Spacing Order; Ex. 10, Increased Density Order.

5.     This fact is not material as Plaintiffs have admitted that Ovintiv complied with all OCC orders. This fact also lacks any evidentiary support and should be disregarded pursuant to LCvR 56.1(d).

6.     Ovintiv admits that its predecessor-in-interest drilled the Alig A-1, Alig A-2, Alig A-3, and Alig A-4 (the "Alig Wells") pursuant to the Drilling and Spacing Order and admits that it operated the Alig Wells at all relevant times.  Ovintiv admits the Alig Wells are gas wells.  Ovintiv disputes that the Drilling and Spacing Order created a "gas" drilling and spacing unit. *See* Doc. No. 48, Ex. 3, Drilling and Spacing Order; Ex. 10, Increased Density Order.

7.     Plaintiffs' Fact No. 7 relates to allegations about the Zinger Well and development in Section 35, Township 15 North, Range 9 West, which are not at issue in this litigation. Proof of these alleged facts has no bearing on whether Ovintiv breached the Cory Lease covering minerals in Section 36. Moreover, Plaintiffs cannot argue that any drilling and development that occurred in Section 35 correlates to or demonstrates potential development in Section 36 without the use of expert testimony from a geologist. These facts are wholly unsupported by the evidence or expert testimony, and Plaintiffs have withdrawn their only purported geology expert. *See* Ex. 1 attached hereto, Email Correspondence.  To the contrary, the sole expert geologist in this case has testified that all of the wells drilled prior to 2017 in the same common source of supply and section as the Katie Well (Section 36) were *gas* wells, unlike the Zinger Well, which Plaintiffs

allege was an oil well completed in Section 35. Ex. 2 attached hereto, Affidavit of G. Hale, ¶ 2. Evidence demonstrating that the Zinger Well is an oil well does not establish that the Katie Well is or was likely to be an oil well. Ex. 2, ¶ 3.

8.    Plaintiffs' Fact No. 8 relates to development in Section 35, Township 15 North, Range 9 West, which is not at issue in this litigation. Proof of these alleged facts has no bearing on whether Ovintiv breached the Cory Lease covering minerals in Section 36. Plaintiffs cannot argue that any drilling and development that occurred in Section 35 correlates to or demonstrates potential development in Section 36 without the use of expert testimony from a geologist. These facts are wholly unsupported by the evidence or expert testimony, and Plaintiffs have withdrawn their only purported geology expert. *Id.*

9.    Plaintiffs' Fact No. 9 relates to allegations about the Alig1H-35 Well and development in a different formation and different section than that at issue in this litigation.  Proof of these alleged facts has no bearing on whether Ovintiv breached the Cory Lease covering minerals in Section 36. Plaintiffs cannot argue that any drilling and development that occurred in Section 35 correlates to or demonstrates potential development in Section 36 without the use of expert testimony from a geologist. This fact is wholly unsupported by the evidence or expert testimony, and Plaintiffs have withdrawn their only purported geology expert.

10.    Ovintiv admits that the Katie Well was staked in April 2017.

11.    The alleged facts asserted in paragraph 11 do not contain evidentiary support and therefore should not be considered by the Court pursuant to LCvR 56.1.[2] For further response, Ovintiv denies that any of their actions were in violation of the Cory Lease. Ovintiv further states that the Cory Lease had been put in a 640-acre Unit for production of oil or gas by order of the Corporation Commission in 1980, some 37 years prior to April 2017. *See* Doc. No. 48, Ex. 3, Drilling and Spacing Order.

12.    Ovintiv disputes Plaintiffs' Fact No. 12.  In CD No. 201702631-T, Ovintiv specifically stated that existing drilling and spacing orders were not being vacated.  *See,* Doc. No. 46, Ex. 8, ¶ 4 (wherein Ovintiv stated that "the following orders are not being vacated . . . Order No. 164538").  Further, the Unit created by the Drilling and Spacing Order governs production of all hydrocarbons from the Unit. The subsequent proceedings described in this "fact" are a remnant of Plaintiffs' attempts to allege a bad faith claim, which has been dismissed, or are part of an impermissible collateral attack on proceedings before the OCC. In either case, these facts are immaterial. The proper avenue for Plaintiffs to challenge the drilling of the Katie Well pursuant to these orders is through objections and appeals at the OCC, which Plaintiffs have not done.

13.    Fact No. 13 is irrelevant and immaterial to Plaintiffs' claim for breach of contract and motion for summary judgment on the same. The 640-acre Unit created by the Drilling and Spacing Order governs production of all hydrocarbons from the Unit.

---

[2] *See, e.g., Blocker v. ConocoPhillips Co*., 378 F.Supp.3d 1066, 1068-69 (W.D. Okla. May 6, 2019) (citing Fed. R. Civ. P. 56(c)(1)(A)-(B))("Parties may establish the existence or nonexistence of a material disputed fact by: citing to 'depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; in the record.")

The subsequent proceedings described in this "fact" are a remnant of Plaintiffs' attempts to allege a bad faith claim, which has been dismissed, or are part of an impermissible collateral attack on proceedings before the OCC. In either case, these facts are immaterial. The proper avenue for Plaintiffs to challenge the drilling of the Katie Well pursuant to these orders is through objections and appeals at the OCC, which Plaintiffs have not done. Additionally, Plaintiffs have offered no evidentiary support for their speculative claim that Ovintiv's dismissal of CD 201702631-T was in response to Plaintiffs' alleged objection. *See,* ¶ 11 above.  Plaintiffs' alleged objection and their speculative claims should be disregarded pursuant to LCvR 56.1(d).

14.    Ovintiv does not dispute that it filed an increased density application requesting an order from the OCC allowing Ovintiv to drill an additional well on the existing 640-acre Unit. In response to that application, the OCC issued Order No. 665651, allowing Ovintiv to drill and complete an oil or gas well pursuant to the Drilling and Spacing Order because "the requested well density is necessary to effectively drain that portion of the named common source of supply." Doc. No. 48, Ex. 10. However, Ovintiv disputes Plaintiffs' characterization of the Unit as a "gas unit." Ovintiv also objects to Plaintiffs' attempts to impermissibly collaterally attack valid OCC orders. The proper avenue for Plaintiffs to challenge the drilling of the Katie Well pursuant to these valid orders is through objections and appeals at the OCC, which Plaintiffs have not done.

15.    Fact No. 15 is disputed and misleading. First, the Drilling and Spacing Order applies to oil, gas, and all other hydrocarbons produced from the 640-acre Unit.

Second, these allegations about the proceedings before the OCC are only relevant to the extent Plaintiffs intend to mount an impermissible collateral attack on the proceedings before the OCC and the resulting orders.  This is plainly improper.  The OCC granted Ovintiv's increased density application and ordered that the Katie Well be drilled pursuant to the Drilling and Spacing Order. Doc. No. 48, Ex. 10.

16.     This alleged fact lacks evidentiary or documentary support and therefore should not be considered by the Court pursuant to LCvR 56.1(d). In addition, Plaintiffs are asking this Court to review various filings and evidence presented at the OCC to determine Ovintiv's intent and whether the filings were proper. This is an impermissible collateral attack on OCC proceedings.

17.     This alleged fact goes to testimony presented at the OCC and the OCC's determination about the proper spacing and location for wells drilled on the 640-acre drilling and spacing Unit. The Drilling and Spacing Order in this case was entered by the OCC based on an express finding that it was necessary to effectively drain the Unit, and the OCC has exclusive authority to determine spacing and correlative rights. Doc. No. 48, Ex. 10. This alleged fact can only be used to mount an impermissible collateral attack and should be disregarded.

18.     This alleged fact lacks any evidentiary support and should be disregarded pursuant to LCvR 56.1(d).  Additionally, this alleged fact is immaterial to Plaintiffs' claim for breach of contract. As long as a well is drilled within a drilling and spacing unit, it is treated the same as if it were drilled any other place within the unit. 52 Okla.

Stat. § 87.1 Moreover, the purpose of this alleged fact can only be to attack the drilling and spacing powers of the OCC, which is improper.

19.    Ovintiv disputes the alleged facts contained in paragraph 19. The Katie Well was not drilled on a gas unit. The Katie Well was drilled on a 640-acre Unit pursuant to a Drilling and Spacing Order, Increased Density Order, and Well Permit which allowed Ovintiv to complete an oil or gas well. Doc. No. 48, Exs. 3, 10, 11. The proper avenue for Plaintiffs to challenge the drilling of the Katie Well pursuant to these orders is through objections and appeals at the OCC, which Plaintiffs have not done.

20.    Ovintiv does not dispute that the Katie Well was classified as an oil well after it began production. However, it was not classified as an oil well prior to drilling and completion. Doc. No. 48, Ex. 12, 1002A for the Katie Well. The Katie Well was drilled pursuant to Orders of the OCC and after it was completed, it produced both oil and gas in a ratio such that it was classified as an oil well. *See,* Doc. No. 48, Ex. 12.

## ADDITIONAL MATERIAL UNDISPUTED FACTS

1.    Plaintiffs' predecessors-in-interest executed an Oil and Gas Lease dated March 14, 1977, recorded at Book 566, Page 409, in Kingfisher County, Oklahoma (the "Cory Lease") covering the Northeast Quarter (NE/4) of Section 36, Township 15 North, Range 9 West.  *See,* Doc. 48, Ex. 1, Oil and Gas Lease.

2.    The Cory Lease also contains a standard voluntary pooling provision allowing the lessee "the right and power to pool or combine acreage covered by this lease or any portion thereof with other land, lease, or leases in the immediate vicinity thereof, when in lessee's judgment it is necessary or advisable to do so in order to properly

develop and operate said lease premises so as to promote the conservation of oil, gas or other minerals in and under that may be produced from said premises." *Id.* ¶ 6; *See,* Ex. 3 attached hereto, Affidavit of R. Grimes, ¶ 4.

3.      The voluntary pooling provision of the Cory Lease expressly provides that it is meant to promote "the conservation of oil, gas or other minerals in and under that may be produced from said premises." Doc. 48, Ex. 1, ¶ 6.

4.      In 1980, the OCC entered the Drilling and Spacing Order, establishing a 640-acre drilling and spacing unit encompassing the entirety of Section 36, Township 15 North, Range 9 West, Kingfisher County, for purposes of "securing the greatest ultimate recovery from the reservoir, the prevention of waste and the protection of correlative rights." Doc. 48, Ex. 3, Order, p. 3.

5.      In 2017, Ovintiv applied for an exception to the Drilling and Spacing Order to increase well density and allow for drilling of the Katie 1509 1H-36 Well ("Katie Well"). Doc. No. 48, Ex. 8, Application.

6.      Plaintiffs received notice of the increased density application and hearing on the same but did not object. Doc. No. 48, Ex. 9, Notice of Hearing.

7.      The increased well density application was granted, and the OCC issued Order No. 665651, the Increased Density Order, which said the Katie Well could be drilled pursuant to the Drilling and Spacing Order and "completed as a predominantly **oil** well" **or** a "predominantly **gas** well." Doc. No. 48, Ex. 10, Order, p. 2. The OCC, in the Increased Density Order, reasoned that "the requested well density is necessary to

effectively drain that portion of the named common source of supply that will not be drained by the existing unit wells." *Id.*

8.    Plaintiffs' expert admits that if the Drilling and Spacing Order applies to oil, the Drilling and Spacing Order supersedes the voluntary pooling provision and Ovintiv has not breached the oil and gas lease. Doc. No. 48, Ex. 5, Testimony of S. Agee, 35:14-19; 163:2-9; 51:11-25.

## ARGUMENTS AND AUTHORITIES

**I.    Plaintiffs' Motion is an attempt to collaterally attack valid orders of the OCC.**

Of the twenty alleged undisputed facts set forth in Plaintiffs' Motion, seventeen relate to the proceedings at the OCC, including whether the Drilling and Spacing Order applied to oil production from the unit and testimony presented by Ovintiv at the OCC. *See,* Plaintiffs' UDF ¶¶ 2-5, 7-9, 11-20. First, the Drilling and Spacing Order applies to oil, gas, and all other hydrocarbons produced from the 640-acre Unit. *Meredith v. Corp. Comm'n*, 368 P.2d 828, 831 (Okla. 1961). Second, these allegations about the proceedings before the OCC are only relevant to the extent Plaintiffs intend to mount an impermissible collateral attack on the proceedings before the OCC and the resulting orders. This is plainly improper. *See, e.g., GHK Explorations Co. v. Tenneco Oil Co.*, 857 F.2d 1388, 1389-90 (10th Cir. 1988) ("The Commission, on the other hand, has been granted exclusive jurisdiction by the Oklahoma legislature 'to interpret clarify, amend and supplement its own orders.'") In addition, Plaintiffs use purposefully inflammatory language and accusations without any evidentiary support that Ovintiv "lied" in its dealings with the OCC (Doc. No. 46, p. 7) in an attempt to muddy waters and litigate

11

their now-dismissed claim for "bad faith" under the guise of litigating their contract claim. The OCC proceedings and Plaintiffs' thinly-veiled conspiratorial allegations about Ovintiv's actions are not relevant to the matter of whether Ovintiv violated the Cory Lease when it drilled the Katie Well on an existing 640-acre Unit created pursuant to the OCC's statutory pooling and unitization power. The proper avenue for Plaintiffs to challenge the drilling of the Katie Well pursuant to these orders is through objections and appeals at the OCC, which Plaintiffs did not do.  As has been admitted by Plaintiffs, the Katie Well was drilled pursuant to valid OCC orders and cannot be collaterally attacked in this case.  Therefore, the only issue in this case is whether those valid OCC orders supersede the voluntary pooling provisions in the Cory Lease.  As set forth below, Oklahoma law is clear on this issue, Plaintiffs' motion should be denied, and Ovintiv's motion for summary judgment should be granted.

## II.   Ovintiv did not breach the voluntary pooling provision of the Cory Lease because it was superseded by the Unit created by the OCC.

The Plaintiffs' entire claim for breach of contract hinges on the assertion that Ovintiv had to comply with the voluntary pooling provision of the Cory Lease despite the OCC's Drilling and Spacing Order. This assertion, and therefore Plaintiffs' breach of contract claim, fails as a matter of law because the OCC's Drilling and Spacing Order supersedes the voluntary pooling provision of the Cory Lease and parties cannot contract around valid drilling and spacing orders entered by the OCC.

A.  *The Drilling and Spacing Order supersedes the voluntary pooling provision.*

The Oklahoma Supreme Court has held that voluntary units are superseded by units created by the OCC in a valid exercise of their police powers. *Hladik v. Lee*, 541 P.2d 196 (Okla. 1975).[3] The oil and gas lease in *Hladik* contained a voluntary pooling provision allowing the lessee to pool tracts and form a single unit for production of gas. *Id*. at 197. The lessee created a 480-acre unit pursuant to that voluntary pooling provision in 1971. *Id*. A year later, the OCC issued a drilling and spacing order creating a new 160-acre unit covering a portion of the 480-acre unit, effectively carving up the voluntary unit. *Id*.

The plaintiff in *Hladik* sued to preserve the declared unit so she would not be cut out of royalties from production on the new 160-acre unit. *Id*. The Court upheld the statutory unit and held that it superseded the voluntary declared unit. *Id*. The Court recognized first, that the statutory drilling and spacing unit was created pursuant to a valid exercise of the police power in the interest of conservation, and private contractual rights must yield. *Id*. at 198. In addition, the Court recognized that the OCC's power to create superseding spacing units was in effect at the time the lease was executed, and therefore was incorporated in the lease. *Id*. at 199. Finally, the Court said the express intent of the parties in the lease was to promote conservation and prevent waste.

[3] A detailed discussion of the *Hladik* case is included in Ovintiv's Motion for Summary Judgment. Doc. No. 48, p. 13-16. Ovintiv will not repeat all of the arguments contained in its Motion, but incorporates them by reference. Not only do Plaintiffs fail to find support in *Hladik* for their Motion, *Hladik* establishes Ovintiv's right to summary judgment on Plaintiffs' breach of contract claims. As a matter of law, Ovintiv did not breach the voluntary pooling provision of the Cory Lease because it was superseded by Drilling and Spacing Order.

Accordingly, the OCC's statutory unit, though inconsistent with the declared unit, was actually consistent with the parties' intent. *Id*.

Plaintiffs argue that, even when superseding orders are entered by the OCC, the relationship of lessees and lessors is governed by the terms of the oil and gas lease. Doc. No. 46, p. 11-12. In support of this argument, Plaintiffs cite to *Hladik v. Lee*. However, Plaintiffs have selectively quoted *Hladik* and omitted critical language. Plaintiffs quote the following passage in their Motion:

> When a unit created pursuant to statute conflicts with a voluntary unit, the statutory unit will prevail. The rights of the lessors and lessees of land included in the voluntary unit will be governed by their agreement.

Doc. No. 46, p. 11. But Plaintiffs omitted *the very next sentence* from *Hladik*, which reiterates the holding of the case and directly contradicts Plaintiffs' argument:

> If the voluntary unit is created by an exercise of the [lessee's] pooling power, **a statutory unit subsequently created will supersede the voluntary unit**, and if only a part of the voluntary unit is included in the statutory unit, payment of royalty will be made on the basis of acreage included in the statutory unit.

*Hladik*, 541 P.2d at 199 (emphasis added). A complete reading of *Hladik* is clear that statutory units created by the OCC will supersede voluntary pooling provisions contained in oil and gas leases.

### B.  *Parties cannot contract around drilling and spacing units created by the OCC.*

Plaintiffs' argument that parties can contract around the 640-acre spacing unit created by the OCC should be rejected.  Oklahoma law is clear that while private parties may enter into agreements affecting the parties involved, parties cannot enter into

contracts which would impinge OCC drilling and spacing units. *Hladik*, 541 P. 2d at 198; *Nisbet v. Midwest Oil Corp*., 451 P.2d 687 (Okla. 1968).

The OCC has a vested interest in preventing waste of natural resources and conserving oil and gas. *See e.g., Hladik*, 541 P.2d at 198; *ONG v. Long*, 406 P.2d 499, 503 (Okla. 1965). To protect that interest, the OCC has been granted authority to create drilling and spacing units for the production of oil and gas. *Id.* The OCC's authority to drill and space goes to the heart of their authority and mandate to conserve natural resources and it cannot be contravened by private contract. *See id.* By contrast, the OCC does not have an interest in how an interest owner "might agree to share his royalty participation." *Hladik*, 541 P.2d at 198. Accordingly, private parties may enter into contracts to share royalties from production in a particular manner, regardless of subsequent spacing orders.

Like *Hladik*, *Nisbet v. Midwest Oil Corp*., 451 P.2d 687 (Okla. 1968), also relied upon by Plaintiffs, recognizes the power of parties to contract for private distribution of royalties. It does not allow parties to contravene the OCC's drilling and spacing authority. *Nisbet* explicitly recognizes the narrow right of private parties to contract and outlines the boundaries: Private parties can only contract to the extent it does not "[impinge] upon the authority of the commission to make orders establishing spacing and drilling units." *Nisbet*, 451 P.2d at 697.

Here, Plaintiffs claim their interpretation of the Cory Lease would not prevent the OCC from entering drilling and spacing orders to create a 640-acre Unit. However, Plaintiffs' interpretation would make it illegal for Ovintiv to drill a well pursuant to the

15

Drilling and Spacing Order. The Plaintiffs clearly have no authority to prevent the OCC from entering any order; but a contract rendering the OCC orders ineffective is just as much a violation of the OCC's power and Plaintiffs also lack the authority to enter such a contract. Plaintiffs' interpretation clearly impinges on the OCC's authority to create drilling and spacing units, and therefore fails as a matter of law. Ovintiv did not breach the Cory Lease when it drilled the Katie Well pursuant to the Drilling and Spacing Order. Thus, Plaintiffs' Motion should be denied.

III.    **The parties to the Cory Lease intended to prevent waste, promote conservation, and yield to Orders of the OCC entered in furtherance of those goals.**

Oklahoma law presumes the parties to oil and gas leases incorporate the powers of the OCC to create drilling and spacing units and intend to yield to OCC orders. Oklahoma law is also clear that parties do not lose their bargained-for rights when a drilling and spacing unit supersedes a voluntary pooling provision.  Instead, the drilling and spacing unit furthers the intent of the parties in the lease, i.e. to prevent waste and preserve correlative rights.

In *Hladik*, the Court reviewed the following voluntary pooling provision:

The Hladik lease permits pooling '* * * when in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of * * * gas * * * in and under and that may be produced from said premises. * * *'

*Hladik,* 541 P.2d at 198. To compare, the voluntary pooling provision of the Cory Lease provides for pooling when:

in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the

conservation of oil, gas or other minerals in and under that may be produced from said premises.

Doc. No. 48, Ex. 1.

When examining the *Hladik* pooling provision, the Court said the lease indicates that the parties "intended to permit their tract to be pooled with other lands when such poling would promote conservation of gas from their premises." *Hladik,* 541 P.2d at 199. Likewise, the Court recognized that the OCC had drilling and spacing authority for the "purpose of preventing waste and protecting correlative rights." *Id.* (citing 52 Okla. Stat. § 87.1). The intent of the voluntary pooling provision in *Hladik* lease and the OCC's power to create drilling and spacing units was aligned. Accordingly, when the OCC created the superseding drilling and spacing Unit, it actually acted in conformity with the intent of the parties to the lease.

Plaintiffs admit that they "do not argue here that the Katie Well was not drilled in the best interest of the public" instead, they argue that "it violates their negotiated rights under the Lease." Doc. No. 46, p. 13. By Plaintiffs' admissions, the Katie Well was drilled pursuant to valid OCC orders, and the Katie Well was drilled in the best interest of the public. Accordingly, the parties agree that the drilling of the Katie Well was done in conformity with the fundamental purpose and intent of the Cory Lease.

Under *Hladik*, OCC orders that prevent waste and protect correlative rights advance the intent of private parties' to prevent waste—even when those orders supersede the parties' lease provisions or voluntary agreements. Moreover, the Court will presume the parties intended to yield to OCC orders in furtherance of these shared goals.

*Hladik*, 541 P.2d at 198-99. Accordingly, when the OCC issued the Drilling and Spacing Order in this case that overruled the voluntary pooling provision of the Cory Lease, it was promoting the parties' intent, not frustrating it.

In addition, parties to oil and gas leases are presumed to incorporate the statutory powers of the OCC in their oil and gas leases. In *Hladik*, the Court explained that the OCC's authority to create spacing units that would carve up and supersede declared units was in existence when the lease was entered. *Id*. at 199. The parties were presumed to be aware of those powers. *Id*. *See also O.N.G. v. Long*, 406 P.2d 499 (Okla. 1965) ("When this lease was entered into the parties knew of the authority of the Oklahoma Corporation Commission to enact well-spacing regulations in furtherance of conserving oil and gas, and they contracted subject thereto.") Therefore, the intent of a voluntary pooling clause like the one in *Hladik*, and the Cory Lease, is that "any spacing unit established by the Corporation Commission would, insofar as it covered the same lands and formations, supersede a declared unit created pursuant to a [voluntary] pooling clause." *Id*. at 199.

*Gillham v. Jenkins,* 244 P.2d 291 (Okla. 1952), cited by Plaintiff, also supports Ovintiv's position. The lease in *Gillham*, like the Cory Lease, specifically provided that all "express or implied covenants shall be subject to all Federal and State laws, executive orders and rules or regulations." *Id*. at 293. The lessee drilled a well on an 80 acre leasehold, began production, and discovered a gas reservoir. Under regulations existing at the time, the lessee was required to produce gas from a unit of at least 160 acres. So, in order to continue development and production, the lessee had to pool the acreage with an adjoining 80 acre lease. *Id*. The Court reasoned that the regulations were in place at the

time the oil and gas lease was executed, so the parties contracted with reference to the conditions and regulations in existence. Accordingly, compliance with the regulations was presumed to be contemplated by the parties to the lease. *Id*. In addition, the Court reasoned that the intent of the parties to the oil and gas lease was to pool acreage as necessary to ensure development of the premises for oil and gas. *Id*. at 294. If the lessee did not unitize the acreage, it would have meant "abandonment of the entire project." *Id*. The Court strongly disfavored an interpretation that would result in abandonment.

The reasoning of *Gillham* applies here. As discussed above, and at length in Ovintiv's Motion for Summary Judgment (Doc. No. 48, p. 13-16), the parties to the Cory Lease are presumed to have contracted subject to the powers of the OCC to create superseding drilling and spacing units. Moreover, drilling the Katie Well on the 640-acre Unit was done in furtherance of oil and gas development.[4] If Plaintiffs' argument prevailed, Ovintiv would not be able to drill on the 640-acre Unit created by the OCC, and would have had to effectively abandon oil and gas development on the Unit, including a well that is producing royalties in favor of Plaintiffs. Plaintiffs' interpretation of the Cory Lease is plainly contrary to *Gillham*.

Plaintiffs have asked the Court to look at the intent of the Cory Lease. Oklahoma law is clear that the intent of voluntary pooling provisions, like that in the Cory Lease, is to promote conservation and yield to superseding OCC orders enacted with the same purpose. Accordingly, Ovintiv acted in conformity with the Cory Lease and its

---

[4] Plaintiffs note that their minerals are "burdened" by the Cory Lease, but they omit that they also are entitled to the benefit of royalties from production attributable to the in the Unit. *See,* 52 Okla. Stat. §87.1.

fundamental intent by drilling the Katie Well pursuant to valid orders from the OCC for purpose of developing the premises for oil and gas.

## IV.    Plaintiffs cite no law in support of their alleged remedy.

As a remedy, Plaintiffs claim that Ovintiv was required to renegotiate the Cory Lease. Doc. No. 46, p. 9. Though Ovintiv disputes that it breached the Cory Lease by drilling on the 640-acre Unit, even if it did, Plaintiffs cite no case law supporting their argument that breach of the voluntary pooling provision would result in lease termination and require renegotiation of the Cory Lease. To the contrary, Oklahoma law is clear that breaches of oil and gas leases typically do *not* result in termination of the oil and gas lease. *See, e.g., Pack v. Santa Fe Intern. Corp*., 869 P.2d 323 (Okla. 1994)(noting that breach of duty to pay shut in royalties does not in and of it self cause termination of a lease). Accordingly, even if Ovintiv breached the Cory Lease (which it did not), it would not be required to renegotiate and acquire a new lease from Plaintiffs.

## <u>CONCLUSION</u>

This case is about an oil well that was drilled pursuant to valid OCC orders and, as Plaintiffs admit, in a manner consistent with the best interest of the public. Plaintiffs' claim for breach of contract fails as a matter of law because the voluntary pooling provision upon which Plaintiffs rely was superseded, because Ovintiv acted in conformity with the intent of the Cory Lease, and because Plaintiffs' interpretation of the Cory Lease is unsupported by and contrary to Oklahoma law.

Respectfully submitted,


_s/ Jodi C. Cole_
Timothy J. Bomhoff, OBA #13172
Jodi C. Cole, OBA #22107
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
tim.bomhoff@mcafeetaft.com
jodi.cole@mcafeetaft.com


**Attorneys for Defendant Ovintiv Mid-Continent, Inc., formerly known as Newfield Exploration Mid-Continent, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on August 26, 2020, I electronically filed the attached document with the Clerk of Court using the CM/ECF system for electronic filing. A Notice of Electronic Filing will be automatically transmitted to the following CM/ECF registrants currently on file.

Niles E. Stuck
Niles Stuck, PLLC
2524 N. Broadway, #440
Edmond, OK 73034
niles@nstucklaw.com
Attorney for Plaintiffs

Russ Walker
Walker & Walker
511 Couch Drive, Third Floor
Oklahoma City, Oklahoma 73102
rjwalker@walkerandwalker.com
Attorney for Plaintiffs

*/s/ Jodi Cole*