IN THE UNITED STATES DISTRICT COURT FOI
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CURTIS CORY AND CHERYL CORY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. CIV-19-221-G |
| | ) |
| NEWFIELD EXPLORATION | ) |
| MID-CONTINENT, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS CURTIS CORY AND CHERYL CORY'S
RESPONSE IN OPPOSITION TO
DEFENDANT OVINTIV MID-CONTINENT INC.'S
MOTION FOR SUMMARY JUDGMENT**

Niles Stuck, OBA #22312
Niles Stuck, PLLC
2524 N. Broadway, Suite 440
Edmond, OK  73034
Telephone: 405-358-7819
niles@nstucklaw.com

**Attorney for Plaintiffs Curtis Cory and Cheryl Cory**

August 26, 2020

**TABLE OF AUTHORITIES**

INTRODUCTION AND SUMMARY OF ARGUMENT……………………………………..1

UNDISPUTED MATERIAL FACTS…………………………………………………….2

ARGUMENT AND AUTHORITIES……………………………………………………...3

      I.      Plaintiffs are not collaterally attacking any OCC Order……..……………………3

      II.     Drilling and Spacing Orders do not supersede pooling clauses contained in oil and gas leases…………………………………………………………………….…4

      III.    The Cory Lease is not held by production in paying quantities absent production from the Katie Well……………………………………………………….……7

CONCLUSION…………………………………………………………………………...…..8

# TABLE OF AUTHORITIES

**Cases**

*Hladik v. Lee,* 541 P.2D 196, 199 (Okla. 1975)……………………………………………..1, 6, 7

*Meredith v. Corp. Comm'n*, 368 P.2d 828, 831 (Okla. 1980)………………………………….3, 4

**Statutes**

52 Okla. Stat. § 87.1……………………………………………………………………….….3, 5

Plaintiffs, Curtis Cory and Cheryl Cory ("Corys"), responds in opposition to Defendant, Ovintiv Mid-Continent Inc., formerly known as Newfield Exploration Mid-Continent, Inc.'s ("Ovintiv") Motion for Summary Judgment.

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Ovintiv argues the Corys are "claiming that the Katie Well was improperly drilled on the 40 year old drilling and spacing Unit because it is an oil well, and the Unit was spaced for gas. Plaintiffs are not suing to invalidate a spacing order. The Corys are suing for breach of contract.

The Corys are not arguing the Katie Well was drilled in violation of any Oklahoma Corporation Commission ("OCC") Order or regulation, the Corys argue the Katie Well violates their private contract. The Corys are not asking this court to invalidate any OCC Order. The Corys are asking the court to find a well drilled outside the terms of their lease not perpetuate the lease and ensure they are treated as unleased with regards to the Katie Well.

Ovintiv's other argument is that the Corys' Lease conflicts with the spacing unit and must yield to that spacing. Oil and gas has been produced from the Corys' land in compliance with both the spacing unit and the lease for almost forty years until Ovintiv drilled the Katie Well. Ovintiv cites *Hladik v. Lee,* 1975 OK 99, 541 P.2d 196 in support of their argument that spacing orders supersede pooling limitations contained in an oil and gas lease. Hladik contradicts Ovintiv's argument; "in the interpretation of a contract the intention of the parties, at the time the contract was made, is a paramount objective" *Id.* at ¶ 23, 198 and finding that "at time [*sic*] Hladiks executed their lease they intended to permit their tract to be pooled with other lands when such pooling would promote conservation of gas from their premises." *Id.* at ¶ 25, 198. It is clear in this case that the parties negotiated limitations on Ovintiv's right to pool their lands when

1

exploring for oil. Again, the Corys do not argue Ovintiv did not have the right to drill or produce hydrocarbons from the Katie Well, only that the well was drilled outside the terms of their lease.

Finally, Ovintiv argues production from unit satisfies the habendum clause contained in the lease. Simply put, Ovintiv is correct if production from the Katie Well perpetuates the Lease. The Katie well was drilled outside the express terms of the lease and therefore that production cannot satisfy the habendum clause contained in the lease. Once the production from the Katie Well is removed from the analysis, it is clear the Lease has expired by its own terms.

## UNDISPUTED MATERIAL FACTS

Ovintiv's description of the facts is accurate, but Ovintiv completely fails describe their stated intent to drill the Katie Well as an oil well and thereby combine the Corys' land with other adjacent property to explore for oil in violation of their lease.

1. On April 27, 2017, Newfield filed Application CD No. 201702631-T requesting the OCC create a drilling and spacing unit for the exploration of oil. Defendant requested the OCC vacate the existing gas units and establish one 640 acre oil unit for the Mississippian common source of supply. Exhibit 1 Application CD No. 201702631.

> That Applicant requests that the Commission enter its order extending Order No. 643680 insofar as it established a 640-acre horizontal drilling and spacing unit for the Mississippian common source of supply underlying Section 25, Township 15 North, Range 9 West, Kingfisher County, Oklahoma to include Section 36, Township 15 North, Range 9 West, Kingfisher County, Oklahoma and reclassify as oil…"

Order No. 643680 established a unit for the exploration of gas. Newfield explicitly requested this order be reclassified as establishing a unit for the exploration of oil in Section 36, Township 15 North, Range 9 West, Kingfisher County, Oklahoma ("Section 36").

The Corys also object to the inclusion of testimony from an expert witness insofar as the conclusions of that witness are matters of law properly within the purview of the Court. Mr. Steve Agee, as an economist who is experienced in the oil industry but not an attorney, may believe spacing orders supersede pooling provisions in an oil and gas lease, but that is a legal question before the Court that should be determined in light of statute and caselaw rather than the opinions of an expert witness.

## ARGUMENTS AND AUTHORITIES

### I.   Plaintiffs are not collaterally attacking any OCC Order

The Plaintiffs are not seeking to vacate an OCC order and therefore are not attempting to collaterally attack an OCC order. Ovintiv has already made this argument in this case and it was properly rejected by this Court. "Plaintiffs in this case seek not to reverse, modify, or correct any OCC order but to enforce a private contractual right. As such, their lawsuit does not amount to a collateral attack on Order No. 164538 or Order No. 665651, and their claims are properly before this Court," Order granting in part and denying in part Def. Mot. For Judgement on the Pleadings at 6-7.

Ovintiv cites *Meredith v. Corp. Comm'n*, 368 P.2d 828, 831 (Okla. 1961) and argue, "the plaintiff in *Meredith* made the same argument as the Plaintiffs in this case." In fact, the plaintiff in *Meredith* sought to vacate various OCC Orders arguing they violated 52 Okla Stat. 87.1 whereas int his case the Corys seek to enforce their private contract.

The facts in *Meredith* are distinguishable. The Court in *Meredith* found, "when the well located on the Meredith land was begun that it was believed that it would be a gas well" *Id* at ¶

15, 831, whereas in this case Ovintiv always intended to explore for oil and filed applications to that effect at the OCC. The more important distinction, however, is that, unlike in *Meredith*, the Corys have not sued the OCC to vacate an order but are instead suing Ovintiv for breach of contract.

For the purposes of this motion, the Corys acknowledge the Katie Well was drilled pursuant to a valid OCC order and is they are not seeking to collaterally attack that order. Whether or not Ovintiv could drill the Katie Well on a gas unit is a separate and distinct question from whether or not the Katie Well was drilled pursuant to the Lease.

## II. Drilling and Spacing Orders do not supersede pooling clauses contained in oil and gas leases

Ovintiv argues both that they did not breach the voluntary pooling provisions in the Cory Lease (see heading of Section II of Ovintiv's Motion for Summary Judgment) and that they did breach the Cory Lease, but the pooling clause contained in that lease is unenforceable as a result of the spacing order.

Ovintiv attempted to vacate the underlying spacing and establish a 640-acre unit expressly for the exploration of oil. Only after the Corys objected did they choose to explore for oil using the existing 640-acre gas unit. It is clear Ovintiv explored for oil on a 640-acre unit in violation of the pooling clause contained in the Lease. Other than the conclusory statement contained in the Section II heading, Ovintiv does not argue they have complied with the Lease, only that they do not have to comply because of a 40 year old spacing order.

Ovintiv states that when a contract conflicts with an OCC Order issued pursuant to the police power of the state, the OCC Order supersedes the contract. *ONG v. Long*, 406 P.2d 499, 504 (Okla. 1965). Ovintiv's conclusion that this principle applies to this case is not supported by

4

*ONG* or statute. The issue in *ONG* was whether a unit well drilled off lease satisfied the lease when the spacing order expressly prohibited a well drilled on the lease. The Court in *ONG* concluded that 52 Okla. Stat. 87.1 authorized the OCC to establish drilling and spacing units which prohibited parties from drilling more than one well and thus a unit well satisfies the delay rental clause of an oil and gas lease. The effect of an order of the Corporation Commission that not more than one gas well may be drilled on a unit of land of not less than 640 acres followed by the drilling and completion of a commercial gas well on any land within the spacing unit combines to satisfy the requirements of a "drill or pay" clause in the oil and gas lease covering lands within such spacing unit. *Okla. Nat. Gas Co. v. Long*, 1965 OK 153, ¶ 1, 406 P.2d 499, 501.

Ovintiv argues the same statute conflicts with pooling restrictions contained in the Cory lease and therefore the lease "must yield" to the police power of the state. This interpretation conflicts with the express language of the statute which recognizes the parties within a unit may chose not to pool their interests.

> When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on the unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit.

52 Okl. St. § 87.1

Pooling provisions within an oil and gas lease do not conflict with a drilling and spacing unit because 52 Okl. St. § 87.1 expressly recognizes that parties who have not pooled their interest may be included in a drilling and spacing unit. The OCC is authorized to issue an order requiring the parties to pool their interests. Had the OCC issued an order

5

pooling the interests of the parties, that order would have conflicted with and superseded the pooling provisions of the Lease. Ovintiv never obtained such an order.

Ovintiv argues the Oklahoma Supreme Court found that statutory drilling and spacing units supersede voluntary units. That is accurate and irrelevant. There are no voluntary units at issue in this case, only the one 640-acre statutory unit established in 1980.

Ovintiv is correct when it states the language in the pooling clauses in the Cory Lease and the Hladik case are nearly identical, but both units at issue in *Hladik* complied with the pooling clause where in this case the exploration of oil on a 640-acre unit is expressly prohibited.

For *Hladik* to truly support Ovintiv's position, the Oklahoma Supreme Court would have had to find the OCC order not only superseded the declared drilling and spacing unit, but the pooling provisions contained in the leases. To the contrary, the Court gives great deference to the intent of the parties when they negotiated the pooling provision. As Ovintiv itself states, "Ultimately, the Court concluded the 'intent of the pooling clause was that any spacing established by the Corporation Commission would, insofar as it covered the same lands and formations, supersede a declared unit pursuant to a [voluntary] pooling clause.'" Def.'s Mot. for Summary Judgment at 11 quoting *Hladik* at 199.

Ovintiv is not arguing a statutory unit supersedes a declared unit, they are arguing a statutory unit supersedes the pooling clause. The Court in *Hladik* expressly rejects Ovintiv's argument, basing its ruling on the pooling clause; a pooling clause Ovintiv now argues the Court in *Hladik* found to be unenforceable.

6

The Court went further and found the parties "could have executed [an] express agreement to share all royalty upon production from declared unit without regard to any subsequent orders of Corporation Commission." *Id.*, at ¶ 22, 198. Not only did the Court fail to find that the drilling and spacing order superseded the underlying oil and gas lease, but also expressly concluded parties can enter into contracts regarding royalties without regard to subsequent OCC orders.

The Courts conclusion in *Hladik* was not that the pooling clause was unenforceable but that the intent of the parties when negotiating the pooling clause was for OCC units would supersede declared units. "We conclude intent of pooling clause was that any spacing unit established by Corporation Commission would, insofar as it covered same lands and formations, supersede a declared unit created pursuant to pooling clause…" Id. at ¶ 34, 199. The intent of the pooling clause would have been irrelevant had the Court in *Hladik* found it unenforceable.

Finally, Ovintiv cites the Cory's expert witness, Steve Agee, in arguing that a drilling and spacing unit supersedes a lease. That is a legal issue before the Court, and it is the purview of the Court to make that determination based on statute and relevant precedent rather than the opinions of a witness offered in deposition.

### III. The Cory Lease is not held by production in paying quantities absent production from the Katie Well

Ovintiv's argument regarding production in paying quantities relies on production from the Katie Well being attributed to the Lease. If Ovintiv is given credit for the Katie Well the lease his held by production. If the Katie Well was drilled outside the terms of the lease, whether or not the Alig Wells alone could have maintained the lease after July 2017 is still at issue. The Alig 2 and

Alig 3 Wells have been pulled and abandoned. The Corys assert the two remaining Alig Wells ceased producing in paying quantities in 2017

## **CONCLUSION**

Ovintiv's Motion for Summary Judgement is prefaced on the assertion that the Corys are suing to vacate OCC Orders and that Drilling and Spacing Orders supersede pooling clauses contained in oil and gas leases. This Court has already ruled the Corys are suing to enforce a private right, not to vacate an OCC Order. The Corys have never sought to collaterally attack any OCC Order. To support their claim pooling clauses are superseded by Drilling and spacing Orders, Ovintiv cites caselaw which recognizes the effectiveness of the very clause Ovintiv now claims is superseded. Oklahoma Statute does authorize the OCC to enter a Pooling Order which would have superseded the pooling clause in the Lease, but Ovintiv never obtained a Pooling Order covering Section 36.

In the Conclusion of Ovintiv's Motion for Summary Judgment, Ovintiv states, "The OCC then ordered that the Katie Well be drilled pursuant to the Drilling and Spacing Order because it was necessary to effectively drain that portion of the named common source of supply that would not be drained by the existing Unit wells." A superficial reading of this sentence suggests the OCC ordered Ovintiv to drill the Katie Well. In fact, Ovintiv was required to obtain a Location Exception Order and an Increased Density Order to allow them to drill a fifth well on Section 36. It is true that Ovintiv was required to drill the Katie Well pursuant to the Spacing Order and other OCC regulations, but they were never forced to breach the Lease.

Finally, Ovintiv argues that, considering the production from the Katie Well, the unit has and is producing in paying quantities. The inclusion of production from the Katie Well is at issue

in the breach of contract claim. Because Ovintiv cannot prevail in their motion against the Cory's breach of contract claim, they cannot prevail in their motion against the Corys quiet title claim.

For these reasons, the Court must overrule Ovintiv's Motion for Summary Judgment.

Respectfully submitted,
_____*s/ Niles Stuck*_____
Niles Stuck, OBA #22312
Niles Stuck, PLLC
2524 N. Broadway, Suite 440
Edmond, Oklahoma 73034
niles@nstucklaw.com
**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

      This certifies that on August 25, 2020, I electronically filed the attached document with the Clerk of the Court using the CM/ECF system for electronic filing. A notice of Electronic Filing will be automatically transmitted to the following CM/ECF registrants currently on file.

Timoth J. Bomhoff  
Jodi C. Cole  
McAfee & Taft A Professional Corporation  
10th Floor, Two Leadership Square  
211 North Robinson  
Oklahoma City, OK  73102-7103  
tim.bomhoff@mcafeetaft.com  
Jodi.cole@mcafeetaft.com  
Attorneys for Defendant  
Newfield Exploration Mid-Continent, Inc.

                                                _____*s/ Niles Stuck*_____